## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Eric Gilbert and Laura Pinho, individually and
on behalf of all others similarly situated,

                        Plaintiffs,

     vs.

SunTrust Banks, Inc.

                    Defendant.

Case No: 9:15-80415-Civ-Brannon

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

## INTRODUCTION

Plaintiffs Eric Gilbert and Laura Pinho ("Plaintiffs") submit this memorandum of law in support of their motion for preliminary approval of their Class Action Settlement Agreement with Defendant SunTrust Banks, Inc. ("SunTrust"), which resolves Plaintiffs' putative class action claims against SunTrust relating to the notice requirements of the Consolidated Omnibus Budget Reconciliation Act ("COBRA").[1]  Under the terms of the Settlement, SunTrust will make important changes to the form and content of its COBRA notice, which will ensure that SunTrust's employees receive adequate information regarding how to exercise their right to elect continuing health insurance coverage under COBRA upon a qualifying event.  In addition, SunTrust will establish a settlement fund of $290,000 for the benefit of the Settlement Class, which will be distributed to Settlement Class Members on a *pro rata* basis after any court-approved deductions for attorneys' fees and expenses and class representative service awards.

---

[1] The Settlement Agreement ("Settlement") was previously filed with the Court on January 18, 2016.  *See ECF No. 66-1.*

For the reasons set forth below, the Settlement is fair, reasonable and adequate, and merits preliminary approval so that the proposed Notice of Settlement can be sent to the Settlement Class.  Among other things:

- The Settlement was vigorously negotiated at arm's length with the assistance of United States Magistrate Judge William Matthewman;

- The Settlement provides for significant monetary and prospective relief;

- The Settlement is not conditioned on the Court's approval of Class Counsels' attorneys' fees or costs, or any service award to the named Plaintiffs;[2]

- The Class Release in the Settlement Agreement is narrowly-tailored to apply only to claims like those asserted in the lawsuit;

- The Settlement Agreement provides for direct notice to Settlement Class Members via first-class mail;

- Settlement Class Members are not required to file claim forms in order to receive settlement checks; and

- The Settlement provides the opportunity for Settlement Class Members to opt-out or object to the Settlement within sixty days of notice being mailed.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Notice of Settlement and authorizing distribution of the Notice via first-class mail; (3) certifying the proposed Settlement Class; (4) designating Plaintiffs as class representatives and Plaintiffs' Counsel as Class Counsel; and (5) scheduling a final approval hearing.  This motion is not opposed by SunTrust as a party to the Settlement.

---

[2] Class Counsel consists of Nichols Kaster, PLLP, Kennedy & Hodges, LLP, and Morgan & Morgan Complex Litigation Group.

## BACKGROUND

### I.     NATURE OF PLAINTIFF'S CLAIM

Plaintiffs Eric Gilbert and Laura Pinho filed this action on April 1, 2015 on behalf of themselves and other similarly-situated class members.  *ECF No. 1.*  Plaintiffs later filed a First Amended Complaint ("FAC") on June 11, 2015. *ECF No. 31.*  In summary, Plaintiffs allege that SunTrust provided them and other class members with a deficient COBRA Notice that did not adequately inform them how to exercise their right to elect COBRA coverage.

Plaintiffs allege that the SunTrust Notice was materially deficient in two respects.  *FAC, ¶¶ 15-16.* First, Plaintiffs allege that the SunTrust Notice failed to "provide the name and address of the party responsible under the plan for administration of continuation coverage benefits," as required by 29 C.F.R. § 2590.606-4(b)(4)(i).  *Id. ¶ 16(a).* Second, Plaintiffs allege that the SunTrust Notice failed to adequately provide an "[a]n explanation of the plan's procedures for electing continuation coverage," as required by 29 C.F.R. § 2590.606-4(b)(4)(v). *Id., ¶ 16(b).* Instead, Plaintiffs allege that SunTrust's Notice directed plan participants to a general human resources website and phone number. *Id. ¶ 18 & Ex. 2.*

On June 29, 2015, SunTrust filed a motion to dismiss the FAC, arguing that SunTrust's notice complied with applicable regulations and that Plaintiffs had failed to exhaust administrative remedies.  *ECF No. 36.*  However, the Court denied SunTrust's motion to dismiss in a written opinion and order on September 18, 2015, finding that Plaintiffs had stated a claim for relief and further finding SunTrust's arguments regarding exhaustion were premature. *ECF No. 47.*

### II.    DISCOVERY AND SETTLEMENT NEGOTIATIONS

After the Court's ruling on the motion to dismiss, the Parties proceeded to engage in discovery.  On October 2, 2015, Plaintiffs served SunTrust with a comprehensive set of written discovery requests (including interrogatories and requests for production), and SunTrust

responded to those requests on November 5, 2015. *Richter Decl., ¶¶ 11-12.* In connection its discovery responses, SunTrust provided information regarding the number of persons who received the COBRA notice at issue in the lawsuit, and also produced over 1,200 pages of documents, including exemplars of its COBRA notices, screen shots from its *myHR* website, relevant emails, and other materials. *Id., ¶ 12.*

After Plaintiffs' counsel analyzed the information and data produced by SunTrust, the parties participated in a Court-ordered settlement conference with Magistrate Judge Wiiliam Mathewman on January 6, 2016.[3] *Id.* ¶ 7. That mediation lasted a full day, with Magistrate Judge Mathewman serving as an intermediary between the parties. *Id.* ¶ 8. At all times, the settlement discussions were conducted at arm's length. *Id.*

At the conclusion of the settlement conference, the Parties reached an agreement in principle, and summarized the essential terms of their agreement on the record. *Id.* ¶ 9. Following the settlement conference, the Parties diligently prepared a comprehensive written Settlement Agreement memorializing those terms, which is the subject of the present motion.

## III.   OVERVIEW OF SETTLEMENT TERMS

### A.   Proposed Nationwide Settlement Class

The Settlement Agreement calls for certification of a nationwide Settlement Class. The Settlement Class is defined as follows:

> All persons who were sent a COBRA Notice by or on behalf of SunTrust at any time from June 1, 2014 through January 6, 2016, excluding any individuals who timely file a valid written notice of intent to opt out of the Settlement.

---

[3] Both of the named Plaintiffs personally attended this settlement conference, as well as a representative from SunTrust. *Id.* ¶ 7.

*Settlement,* ¶ 28.[4]   According to the class data produced by SunTrust, there are approximately 9,000 persons who fall within the Settlement Class.   *Richter Decl.* ¶ 3.

### B.   Prospective Relief

In accordance with the Settlement, SunTrust has agreed to important changes to its COBRA Notice.   *Richter Decl., ¶ 5.*   The agreed-upon COBRA notice, attached as Exhibit A to the Settlement Agreement ("Agreed Notice"), differs from SunTrust's prior COBRA notice, attached as Exhibit 2 to the FAC ("Prior Notice"), in several important respects. First, the Agreed Notice specifically identifies *myHR* as the party responsible for administration of continuation coverage benefits under COBRA. *Id.*   Second, the Agreed Notice identifies the specific location on the *myHR* website where information regarding COBRA coverage and a COBRA coverage election form can be found.   *Id.*   Finally, the Agreed Notice provides an alternate means to obtain an election form, and specifically provides that a COBRA coverage election form will be mailed out to the recipient of the notice upon request. *Id*. These changes to SunTrust's COBRA Notice address the deficiencies alleged in Plaintiffs' First Amended Complaint.   *Id.*

### C.   Monetary Relief

In addition to the foregoing prospective relief, SunTrust has agreed to establish a common fund of $290,000, which will be used to compensate Settlement Class Members and pay any amounts approved by the Court for attorneys' fees, expenses, and class representative service awards.   *Settlement, ¶ 34.*   The net proceeds of the Settlement Fund will be distributed evenly among all Settlement Class Members on a *pro rata* basis.   *Settlement, ¶ 35.*   Notably,

---

[4] The class period starts in June 2014 because SunTrust has provided evidence that the versions of COBRA Notices it used prior to this time did not contain the deficiencies alleged in Plaintiffs' First Amended Complaint.   *Richter Decl., ¶ 3 n.1.*   The class period ends on January 6, 2016 because this is the date that the parties reached a settlement-in-principle of the lawsuit.   *Id.*.

Settlement Class Members will automatically receive their *pro rata* shares of the Settlement Fund without the need to fill out or submit a claim form.

### D.    Release of Claims

In exchange for the foregoing monetary and prospective relief, Settlement Class Members who do not opt out of the Settlement will release SunTrust, my HR, and Xerox HR Solutions, LLC (and their affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, insurers, shareholders, representatives, trustees, principals, and assigns) from all claims asserted in Plaintiffs' complaints or other claims that arise out of or relate to the facts alleged in the complaints. *Settlement*, ¶¶ *27, 45*.  Other types of claims are not released.

### E.    Notice of Settlement, Claims Process, and Settlement Administration

In the event that the Settlement is preliminarily approved by the Court, Settlement Class members will be sent a Notice of Settlement via first-class mail. *Id*., ¶ 46.[5] This comprehensive Notice includes, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) instructions for submitting a claim and the deadline for doing so; (5) a disclosure of the release of claims; (6) an explanation of Settlement Class members' opt-out rights, a date by which Settlement Class members must opt out, and information regarding how to do so; (7) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (8) the date, time, and location of the final approval hearing; and (9) the internet address for the settlement

---

[5] The Notice of Settlement will be sent to Settlement Class Members' addresses as they are maintained by SunTrust's third-party provider of COBRA services, subject to updating by cross-referencing the National Change of Address Database. *Id., ¶* 47.  In the event that a Notice is returned as undeliverable with a forwarding address, it will be forwarded to that address. *Id.*  If a Notice is returned without a forwarding address, the Settlement Administrator or Class Counsel will make reasonable efforts to obtain a valid address for the Settlement Class Member, and remail. *Id.*

website and the toll-free number from which Settlement Class members may obtain additional information about the Settlement; (10) contact information for the Settlement Administrator; and (11) the amount that Class Counsel may seek in attorneys' fees and expenses, as well as the proposed named Plaintiff service awards.  *See Richter Decl., Ex. 4*. Settlement Class members will have 60 days from the date that the Notice of Settlement is mailed to opt out of the Settlement or object to the Settlement.  *Settlement, ¶¶ 16, 48-49*.

To the extent that Settlement Class Members would like further information, there will be a settlement website from which Settlement Class members may download copies of the First Amended Complaint, Settlement Agreement, settlement approval motion papers, and motion papers in support of the requested attorneys' fees, expenses, and class representative service awards.  *Id. at ¶ 47.2*.  In addition, there will be a toll-free number that Settlement Class Members may call for more information about the Settlement.  *Id. at ¶ 47.1*.

### F.      Attorneys' Fees, Costs, and Class Representative Awards

The Settlement provides that Class Counsel will file a motion for attorneys' fees and expenses pursuant to Fed. R. Civ. P. 23(h), at least fourteen days before the deadline for Settlement Class Members to opt out or object to the settlement.  *Id. at ¶¶ 41*.  As explained in the Notice of Settlement, Class Counsel will seek an award of attorneys' fees of no more than $110,000 (less than Class Counsel's lodestar), plus Class Counsel's expenses.  *Id.; see also Richter Decl., Ex. 4*.  In addition, the Settlement provides that modest service awards of up to $5,000 may be sought for the named Plaintiffs, subject to the Court's approval, to compensate these individuals for their time and efforts in connection with this action.  *Settlement, ¶ 44*.

## ARGUMENT

**I.      STANDARD OF REVIEW**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members.  This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010); MANUAL FOR COMPLEX LITIGATION § 30.41, at 236 (3d ed. 1995).  First, counsel submit the proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation.  *Id.*  Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement.  *Id.*

The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  Indeed, the policy favoring settlement is especially relevant in the class action context, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit that the class could hope to obtain.  *See, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." (citation omitted)); *see also* 4 NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002) (citing cases).

At the final approval stage, the Eleventh Circuit has identified six factors that courts should consider in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005).  At the preliminary approval stage, however, the Court is not required to answer the ultimate question of whether the settlement is fair, reasonable, and adequate.  *See* 5 MOORE'S FEDERAL PRACTICE § 23.83[a], at 23-336.2 to 23-339.  Rather, the Court simply makes an initial determination concerning whether the settlement "appears to fall within the range of possible approval[.]"  4 NEWBERG ON CLASS ACTIONS § 11:25; *see also Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).  Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith*, 2010 WL 2401149, at *2.  This standard is more than satisfied here.

## II.   THE PROPOSED SETTLEMENT MORE THAN SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

### A.   The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Magistrate Judge

As an initial matter, the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial Magistrate Judge.  This fact alone weighs in favor of approval.  *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007)

(concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Moreover, the counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *See Richter Decl., ¶¶ 14-19 & Exs. 1-3.* "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION § 30.42 (3d ed. 1995). That is precisely the situation presented here.

### B.     The Case Is Ripe for Settlement at this Stage of the Proceedings

The case is also ripe for settlement at this stage of the proceedings. First, the parties engaged in adversarial litigation for months, and had the benefit of the Court's ruling on the motion to dismiss. Second, SunTrust provided substantial discovery to Plaintiffs' counsel (including both relevant documents and class data) in advance of the settlement conference, which allowed Plaintiffs' counsel to negotiate on an informed basis. Finally, those negotiations took place at an appropriate time, as the Court specifically ordered that the Parties participate in a settlement conference by January 15, 2016. *See ECF No. 52, ¶ 8; see also ECF No. 55.*

### C.     The Settlement Provides Significant Relief to Class Members

As detailed above, the Settlement provides substantial relief to Settlement Class Members. The Settlement requires SunTrust to pay $290,000 into a Settlement Fund to resolve the claims at issue. This represents a gross recovery of approximately $32.22 per class member ($290,000 / 9,000 = $32.22), which is approximately 30% of the $110 statutory penalty that may be awarded for violations of COBRA's notice requirements under 29 C.F.R. § 2575.502c-1

($32.22 / $110 = 29.3%).   This falls well within the range of reasonableness for settlement purposes.   *See In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").   Moreover, ***all*** Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment.

In addition, the Settlement provides significant prospective relief.   Specifically, SunTrust has agreed to make important changes to its COBRA Notice that address the deficiencies alleged in the lawsuit.   Accordingly, the negotiated relief is more than adequate, and "falls within the range of reason." *Smith*, 2010 WL 2401149, at *2.

### D.   Plaintiffs and the Settlement Class Would Face Significant Risks in the Absence of a Settlement

If Plaintiffs had chosen to continue to litigate their claims, a successful outcome was not guaranteed.   As discussed below, Plaintiffs faced significant risks with respect to liability, damages, and certification of a litigation class.

First, with respect to liability, the Court's ruling on the motion to dismiss was not dispositive of the case, and left open certain important issues.   For example, the Court declined to rule on SunTrust's administrative remedies defense, finding it to be "premature."   *See ECF No. 47 at 3.*   Second, the Court did not have before it (and therefore did not consider) the

information on the *myHR* website, which SunTrust contended supplemented its COBRA Notice and was sufficient for purposes of COBRA.[6]

Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110, but no minimum penalty.  *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties—and the amount of penalties up to the $110 maximum—is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1232 (11th Cir. 2002).  In other words, even if Plaintiffs were able to prove that SunTrust violated the COBRA-notice regulation, Plaintiffs and Class Members could have recovered only nominal damages, or even nothing at all. *See Cytrynbaum v. Employee Ret. Plan of Amoco Corp. & Participating Companies*, 338 F. Supp. 2d 1187, 1194 (D. Colo. 2004) (declining to impose a penalty for a delay in producing retirement plan documents).

Finally, Plaintiffs would have faced risks on class certification as well.  In certain cases involving deficient COBRA notices, class certification has been denied.  *See, e.g.*, *Brown-Pfifer v. St. Vincent Health, Inc.*, No. 1:06-CV-0236-SEB-JMS, 2007 WL 2757264, at *8 (S.D. Ind. Sept. 20, 2007); *Kane v. United Indep. Union Welfare Fund*, No. CIV. A. 97-1505, 1998 WL 78985, at *7 (E.D. Pa. Feb. 24, 1998). Thus, it was not guaranteed that the Court would have certified a class on a contested class certification motion in this case.

In light of the foregoing risks, it was reasonable for Plaintiffs to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for members of the Settlement Class.  As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in

---

[6] The COBRA Notice at issue in the lawsuit cross-referenced the *myHR* website (although it was not specific as to where information about COBRA coverage could be found on the website). *See FAC, Ex. 2.*

the future, after protracted and expensive litigation.  In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*Id.* at 560 (internal brackets and quotation marks omitted); *see also Bennett v. Behring Corp.*, 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

      **E.**    **The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to class members (at best), and might have resulted in no relief to class members at all.  In the absence of a settlement, Plaintiffs would have had to take depositions, appear for their own depositions, engage in class certification motion practice, engage in summary judgment motion practice, prepare for trial, and present their case at a trial on the merits.  The costs associated with these litigation activities would have been significant. Moreover, even if Plaintiffs had won certification of a class and litigated the class claims to a successful conclusion, it is likely that the SunTrust would have appealed any judgment entered against it, resulting in further expense and delay.

Complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  By entering into a settlement now, Plaintiffs saved precious time and costs, and avoided the risks associated with further litigation.

F.      **Plaintiffs and Their Counsel Support the Settlement**

Both Plaintiffs and their counsel have submitted declarations in support of the proposed settlement.  *See Gilbert Decl.; Pinho Decl.; Richter Decl.*  This further supports granting preliminary approval of the proposed settlement in this case.  *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) (court should give "great weight" to the recommendations of counsel, given their experience in class action litigation); *In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).  There is no reason to believe that absent class members will view the settlement differently than Plaintiffs and their counsel, and even if isolated class members are not fully satisfied with the settlement terms after receiving notice of the Settlement, they will have the opportunity to opt out or object.

III.    **The Proposed Notice of Settlement Is Reasonable**

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B).  That is precisely the type of notice contemplated here.

Under the Settlement, each member of the Settlement Class will be sent a notice of the proposed settlement via first-class mail, informing them of the terms of the Settlement and their right to opt-out or object.  *See supra* at 5.  This type of notice is presumptively reasonable, and satisfies the requirements of due process.  *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) (explaining that the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process").

The content of the notice is also reasonable and appropriate.  Under Rule 23(c)(2)(B), the notice must clearly and concisely state:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice of Settlement includes all of this information.  *See Richter Decl., Ex. 4.* In addition, the Notice of Settlement clearly spells out the terms of the proposed Settlement, provides a website address where class members can obtain a copy of the Settlement Agreement and other relevant documents, and includes a phone number that class members may call if they have any questions.  *Id.*  Accordingly, this Court should approve the Notice of Settlement, as both the content of the notice and the method of dissemination are reasonable.

## IV.    Certification of the Settlement Class Is Appropriate

In addition to approving the proposed Settlement and Notice of Settlement, this Court should certify the proposed Settlement Class for settlement purposes.  "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks and citation omitted).  Whether to certify a class action rests within the sound discretion of the district court. *Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir. 2004).  However, in the context of a settlement, class certification is more

easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation."  *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.*, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### A.      The Requirements of Rule 23(a) are Met

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a).  Plaintiffs satisfy all four requirements as set forth below.

### 1.      Numerosity

Rule 23(a)(1) requires Plaintiffs to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable.  Here, there are approximately 9,000 members of the proposed Settlement Class.  *See Richter Decl.* ¶ 3.  Thus, the numerosity standard is easily satisfied.  *See Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

### 2.      Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members."  *Williams v. Mowhawk Indus., Inc.*, 568

F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).

"The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted). Here, there are common issues regarding (among other things): (1) whether SunTrust violated COBRA's notice requirements; (2) whether any such violation was willful or the result of bad faith; and (3) whether and to what extent statutory penalties are appropriate. These common issues support certification of the proposed Settlement Class. *See Pierce v. Visteon Corp.*, No. 1:05-CV-1325-LJM-VSS, 2006 WL 6667384, at *3 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class"); *Hornsby v. Macon Cty. Greyhound Park, Inc.*, No. 3:10-CV-680-MHT, 2013 WL 173003, at *1 (M.D. Ala. Jan. 16, 2013) (finding commonality satisfied and certifying COBRA notice class for settlement purposes).

### 3.      Typicality

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. at *3 n.8 (citation omitted). Typicality is satisfied where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Plaintiffs are typical of the Settlement Class that they seek to represent, as they received the same COBRA notice and their claims stem from that COBRA notice. Accordingly, Rule 23(a)(3) is also satisfied. *See Pierce*, 2006 WL 6667384, at *4 (typicality met where "[a]ll

of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory").

### 4.    Adequacy

The requirement of adequate representation addresses two issues: (1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiffs have interests antagonistic to those of the rest of the class. *Williams*, 280 F.R.D. at 673.  Here, Plaintiffs' counsel have extensive experience litigating other class action cases.  *See Richter Decl., ¶¶ 14-19 & Exs. 1-3.*  Moreover, "[t]here is nothing to indicate that [Plaintiffs'] interests are in conflict with any members of the class." *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636 (5th Cir. 2000).  To the contrary, Plaintiffs "share common interests with the class members and seek the same type of relief[.]"  *In re Checking Account Overdraft Litig.*, 275 F.R.D. at *7.  Accordingly, the adequacy requirement is also met.

### B.    The Requirements of Rule 23(b)(3) are Met

In addition to satisfying Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3).  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Here, Plaintiffs seek certification under Rule 23(b)(3), which allows a class action to be maintained if: (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Both of these criteria are satisfied here.

1.      **Predominance**

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law … have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs.*, Inc., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).   This requirement is "readily met" in consumer cases.  *Amchem*, 521 U.S. at 624.

In the present case, the common questions identified above predominate over any individualized issues.   The central issues revolve around a standardized COBRA notice that was common to all class members, whether that notice was lawful, and whether SunTrust should be required to pay statutory penalties for utilizing that notice.   In other, similar cases involving COBRA notices, courts have found that common issues predominated. *See, e.g.*, *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2013 WL 4677918, at *13 (S.D. Tex. Aug. 30, 2013); *Pierce*, 2006 WL 6667384, at *5.  There is no reason to reach a different result here.[7]

2.      **Superiority**

The superiority requirement is also met.   Resolving Settlement Class Members' claims together in a class action is vastly superior to leaving each of them to fend for themselves in litigation against a large corporation. Many Settlement Class Members who received SunTrust's COBRA notice are likely not even aware that their rights may have been violated, and are therefore unlikely to prosecute individual claims. *See Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 374 (N.D. Ill. 2008) (finding class action superior method of litigation where class

---

[7] Whether SunTrust's Notice violated COBRA does not hinge on individualized issues – either it was compliant or it was not.   There is no evidence that SunTrust's conduct in sending the allegedly deficient COBRA notices differed among various class members.

members might not be aware that they have legal claims).  Moreover, given the relatively small size of the claims at stake (involving discretionary statutory penalties of up to $110), it is unlikely that class members would have sufficient incentive to bring their claims on an individual basis.  *See In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 649 (S.D. Fla. 2015) ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability."); *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 533 (M.D. Fla. 1996) (noting that where the value of individual claims is small or even medium-sized, making individual litigation economically infeasible, a class action is a superior method of litigation). Moreover, even if class members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). Thus, a class action is superior to other available methods for fairly and efficiently adjudicating this dispute.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed Preliminary Approval Order.

Dated:   February 16, 2016

*s/ John Yanchunis*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John Yanchunis, FL Bar No. 324681
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Fax: (813) 223-5402
jyanchunis@forthepeople.com

**NICHOLS KASTER, PLLP**
Kai H. Richter, MN Bar No. 0296545*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
krichter@nka.com
* admitted pro hac vice

**KENNEDY HODGES, LLP**
Don J. Foty, TX Bar No. 24050022*
Galvin B. Kennedy, TX Bar No. 00796870**
John A. Neuman, TX Bar No. 24083560*
711 West Alabama
Houston, TX 77006
Telephone: (713) 523-0001
Fax: (713) 523-1116
dfoty@kennedyhodges.com
gkennedy@kennedyhodges.com
jneuman@kennedyhodges.com
* admitted pro hac vice
* pro hac vice application forthcoming

*Attorneys for Plaintiffs and the proposed Class*